Approved: _____
ELIZABETH A. HANFT
Assistant United States Attorney

ORIGINAL

DOC #_____

Before: THE HONORABLE DEBRA FREEMAN
Chief United States Magistrate Judge
Southern District of New York

**18 MAG 1276**

- - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
UNITED STATES OF AMERICA                            :   COMPLAINT
                                                    :
                                                    :   Violations of
                                                    :   26 U.S.C. §§ 5822, 5861(f), & 5871
           - v. -                                   :   and 18 U.S.C. §§ 842(d)(1) & 2
                                                    :
CHRISTIAN TORO and TYLER                            :   COUNTY OF OFFENSE:
TORO,                                               :   BRONX
                                                    :
           Defendants.                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

SETH YOCKEL, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
(Unlawful Manufacture of a Destructive Device)

1. From at least in or about October 2017 up to and including in or about February 2018, in the Southern District of New York and elsewhere, CHRISTIAN TORO and TYLER TORO, the defendants, knowingly did make firearms, and did aid and abet the making of firearms, as defined in Title 26, United States Code, Sections 5845(a)(8) and 5845(f)(1), to wit, CHRISTIAN TORO and TYLER TORO manufactured, and aided and abetted the manufacture of, destructive devices using, among other things, explosive powder at their residence in the Bronx, New York.

(Title 26, United States Code, Sections 5822, 5861(f), and 5871; Title 18, United States Code, Section 2.)

COUNT TWO
(Distribution of Explosive Materials to a Minor)

2. From at least in or about October 2017 up to and including in or about January 2018, in the Southern District of New York and elsewhere, CHRISTIAN TORO, the defendant, knowingly did distribute explosive materials to an individual under twenty-one years of age, to wit, CHRISTIAN TORO provided explosive powder to two individuals in the Bronx, New York, who were under twenty-one years of age.

(Title 18, United States Code Section 842(d)(1).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I am a Special Agent with the FBI, and I have been involved in the investigation of the above-described offense. The information contained in this Complaint is based upon my personal knowledge and participation in this investigation, as well as on my conversations with other law enforcement agents and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

4. Based on my participation in this investigation, including my conversations with other law enforcement agents and my review of reports and records, I have learned the following, in substance and in part:

    a. On or about December 4, 2017, a bomb threat (the "Bomb Threat") was called into a high school in Harlem, New York (the "School"). A particular student ("Student-1") was thereafter arrested for having called in the Bomb Threat.

    b. Shortly after Student-1 was arrested, CHRISTIAN TORO, the defendant, who was a teacher at the School, resigned.

    c. After CHRISTIAN TORO's resignation, TYLER TORO, the defendant, returned to the School a laptop (the "Laptop") that the School had provided to CHRISTIAN TORO for use in connection with his employment.

    d. A technical specialist at the School found on the Laptop, among other things, a document containing a copy of a book (the "Explosives Book") that I know, based on my training and experience, provides instructions for, among other things, manufacturing explosive devices.

5. On or about February 8, 2018, I and other law enforcement agents interviewed CHRISTIAN TORO, the defendant, at an apartment in the Bronx, New York, at which

CHRISTIAN TORO and TYLER TORO, the defendants, and a female relative ("Relative-1") reside (the "Apartment"). During that interview, CHRISTIAN TORO stated, in substance and in part, that he had not intentionally downloaded the Explosives Book to the Laptop, but that he had been researching the 2013 Boston Marathon bombings and had come across the Explosives Book. CHRISTIAN TORO stated that he had never built a bomb and had only looked at the Explosives Book's table of contents.

6. On or about February 14, 2018, I and other law enforcement agents interviewed multiple students at the School, who indicated that at least two students at the School had visited the Apartment, where CHRISTIAN TORO, the defendant, would pay them approximately fifty dollars per hour to break apart fireworks and store the powder that came out of the fireworks in containers. Based on the interviews, it appears that the students visited the apartment between in or around October 2017 and in or around early January 2018.

7. On February 14, 2018, the Honorable Debra Freeman authorized a search warrant (the "Warrant") for the Apartment.

8. Based on my and other law enforcement agents' participation in the execution of the Warrant on February 15, 2018, I have learned the following, in substance and in part:

    a. When law enforcement agents entered the Apartment, CHRISTIAN TORO, TYLER TORO, and Relative-1 were present at the Apartment.

    b. Law enforcement agents found in a bedroom (the "Bedroom") inside the Apartment, among other things:

        i. on the floor of a closet ("Closet-1"), a box containing:

            1. approximately twenty pounds of a substance later identified as iron oxide;

            2. approximately five pounds of a substance later identified as aluminum powder;

            3. approximately five pounds of a substance later identified as potassium nitrate; and

            4. approximately two pounds of confectioner's sugar;

        ii. a glass jar (the "Glass Jar") containing a black powdery substance (the "Powder") later identified as explosive material, on the top shelf of Closet-1;

        iii. a cardboard box containing firecrackers in another closet ("Closet-2");

      iv. a substance that appears, based on law enforcement agents' training and experience, to constitute thermite mixed from iron oxide and aluminum powder, contained in a plastic container in Closet-2;

      v. an additional small container of a substance later identified as potassium nitrate in Closet-2; and

      vi. a bag containing scores of metal spheres of varying sizes (the "Metal Spheres"), also in Closet-2.

    c. Based on my training, experience, and conversations with other law enforcement officers, I have learned the following, in substance and in part:

      i. Iron oxide and aluminum powder can be used as explosive precursor materials and, when combined, form thermite, an explosive material that can create heat and high temperatures;

      ii. confectioner's sugar can be used as a fuel for making explosive devices;

      iii. material such as the Powder is designed to deflagrate when confined in containers such as the Glass Jar and, when properly confined and lit with a fuse, the Powder explodes; and

      iv. items such as the Metal Spheres can be used as fragmentation which, when combined with the Powder, can be released as projectiles, causing damage during an explosion.

    9. Law enforcement agents also found, on a table in the kitchen of the Apartment, a book resembling a diary (the "Diary"), with handwritten pages. The front of the Diary contained writing stating that, if lost, the Diary should be returned to TYLER TORO, the defendant, along with contact information. The Diary includes handwriting that states the following, among other things:

    a. " WHEN YOU FIND OUT I THREW AWAY ALL EVIDENCE [OF OPERATION CODE NAME "FLASH"] I COULD FIND IN YOUR ROOM, I HOPE THIS DOESN'T TURN INTO A SCENE FROM GOODFELLAS";

    b. "WE ARE TWIN TOROS STRIKE US NOW, WE WILL RETURN WITH NANO THERMITE";

    c. "CHRISTIAN ARRESTED[1]";

---

[1] I know, based on my conversations with other law enforcement officers, that, on or about January 31, 2018, CHRISTIAN TORO, the defendant, was arrested by the New York City Police Department and charged with, among other things, rape of a victim less than seventeen years of age.

4

    d.  IF YOU'RE REGISTERED AS A SEX OFFENDER, THINGS WILL BE DIFFICULT. BUT I AM HERE 100%, LIVING, BUYING WEAPONS. WHATEVER WE NEED.

  10. Law enforcement agents also found a yellow backpack (the "Backpack") in a living area of the Apartment, which contained, among other things, a purple index card with handwriting that reads "UNDER THE FULL MOON THE SMALL ONES WILL KNOW TERROR."

  11. Based on law enforcement agents' conversations with Relative-1, I have learned, in substance and in part, that both CHRISTIAN TORO and TYLER TORO, the defendants, occupy the Bedroom, and that the Backpack belonged to CHRISTIAN TORO.

  12. Based on law enforcement agents' review of the Bureau of Alcohol, Tobacco, and Firearms' Federal Licensing System, I have learned that neither CHRISTIAN TORO, the defendant, nor TYLER TORO, the defendant, is licensed to possess or manufacture firearms or explosives.

  WHEREFORE, I respectfully request that CHRISTIAN TORO and TYLER TORO, the defendants, be imprisoned or bailed, as the case may be.

              _____
              SETH YOCKEL
              Special Agent
              Federal Bureau of Investigation

Sworn to before me this
15th day of February 2018

_____
THE HONORABLE DEBRA FREEMAN
CHIEF UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK