**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

May 20, 2019

**BY ECF**
Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 17B
New York, NY 10007

Re:   **United States v. Christian Toro, 18 CR 218 (RMB)**
      (Reply Sentencing Memorandum of Mr. Christian Toro)

Dear Judge Berman:

     I write on behalf of my client Christian Toro and in response to the government's May 10, 2019 sentencing memorandum ("Govt. Mem."). The Govt. Mem. suffers a number of material flaws and provides no convincing reason for sentencing Mr. Toro at or above the advisory guidelines calculation. Instead for the reasons set forth in Mr. Toro's earlier Sentencing Memorandum and in this reply, Mr. Toro should be sentenced to the 15 months in custody already served and three years of supervised release, along with drug and mental health counseling.

     Although giving perfunctory reference to all the sentencing factors (Govt. Mem. at 7), the government spends no effort on any factor other than the operative offense conduct (manufacturing and possessing a destructive device). And, even as to the offense conduct, the government improperly adds speculation and hyperbole unsupported by, or in derogation of, the actual facts before the Court.

     *First*, the government fails properly to address the sentencing factors that guide this Court's sentencing determination. In this regard, the government dedicates just two paragraphs to Mr. Toro's history and characteristics (Govt. Mem. at 10-11), first contending that "however admirable the defendant's accomplishments may otherwise have been, the fact remains he engaged in the instant offense (paragraph one), and then contending the offense was dangerous and "warrants a substantial term of incarceration" (paragraph two). Demonstrably, the government never actually addresses Mr. Toro's history and characteristics, essentially arguing that all of it should be ignored because he committed the offense at issue. This is not the law and, if followed by the Court, would eviscerate the sentencing requirements and parsimony principle set forth in 18 U.S.C. § 3553(a).

Honorable Richard M. Berman
May 20, 2019
Page 2

The Court is required to consider all the things the government implicitly asks the Court to ignore, including (i) Mr. Toro's purely admirable prior history; (ii) the aberrant nature of his offense conduct; (iii) the sudden string of severe personal setbacks, and resulting anxiety, depression, and alcohol and drug abuse, that led to the aberrant conduct; (iv) Mr. Toro's sincere shame and remorse; (v) that Mr. Toro is now clean and sober and rehabilitated, having incurred no disciplinary sanctions while in custody and working as an orderly and volunteering to teach the GED while at the MDC; (vi) that Mr. Toro will do what it takes to continue with his sobriety and poses no real risk of recidivism; and (vii) that the just punishment here includes the severe and lasting negative effects Mr. Toro's aberrant conduct has had upon his reputation, his employment opportunities, and his future. *See* Toro Sentencing Memorandum (stating the facts); *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013) (stating the law).

Remarkably, the government neither discusses nor considers any of this – not Mr. Toro's admirable history; not the specific deterrence achieved; not his rehabilitation and regret; not the lack of recidivism risk; and not the many adverse impacts that are part of any appropriate punishment analysis – in urging the Court to impose a sentence upon Mr. Toro that is far greater than necessary. Applying *all* the sentencing factors to the facts of this case, as Mr. Toro does in his Sentencing Memorandum, it becomes evident that the 15 months Mr. Toro has spent in prison is sufficient. Mr. Toro needs additional counseling, not additional time. The proper sentence here is time served, plus three years of supervised release with mandated drug and mental health counseling,

*Second*, the government repeatedly asserts Christian Toro should be sentenced harshly because he was building an explosive device in service to some kind of nefarious purpose or sinister plan (Govt. Mem. at 2, 3, 4, 5, 8, 10, 11, 12), before finally conceding in its conclusion that "[w]e do not know precisely what plan the defendants had." *Id.* at 12. The government's last-minute concession is too modest. In fact, the government's assertion that such a terroristic plan or purpose existed – which is the linchpin of the Govt. Mem. – is purely speculative. The government fails to identify any target, ideology, philosophy, animating principle, or motivating hatred supporting its bare assertion that Mr. Toro intended some kind of attack that was prevented upon his arrest. This failure is not surprising, given that the Toro brothers did not intend to construct an explosive device for the purpose of actually using it or harming anyone with it.

The Toro brothers' actions were incredibly foolish and showed remarkably poor judgment, but there is no factual basis supporting any conclusion that their actions were prelude to an attack or terror bombing. Indeed, the government's unsupported speculation in this regard is squarely contradicted by the evidence before the Court. *See* PSR ¶ 37 ("I just want you to know that I had no intention of using it, let alone on anyone or anything"; quoting Mr. Toro's plea allocution); Christian Toro Letter to Court (Ex. B)[1] at 1 ("[M]y actions brings me such discomfiture and shame. It was never my intention to cause such fear in any way, nor was it my intention to damage or destroy any property or structures,

---

[1] "Ex. __" refers to the Exhibits attached to Mr. Toro's earlier Sentencing Memorandum.

Honorable Richard M. Berman
May 20, 2019
Page 3

let alone harm any person. I am not a terrorist …"); Neuropsychological examination, evaluation, and report of Elise Caccappolo, Ph.D., ABPP-CN (Ex. A) at 4 (concluding, among other things, that "Christian's acts in the instant offense were not a product of deliberate or purposeful activity … his actions reflect extremely poor judgment and inefficient coping methods … Christian has no history of violence, antisocial behavior, or personality disordered behaviors … and he has never displayed callous disregard towards the rights of others").

The government desperate effort to string together a copy of the widely circulated *Anarchist Cookbook*, certain materials found at the Toro home, and a handful of odd statements into some grand conspiracy by Christian Toro to deliberately harm others in a terrorist bombing is mistaken and unpersuasive.

As explained, Christian has always been interested in chemistry, science, and how things work, and, from his father, who was in the National Guard and loved the Fourth of July and fireworks, he and his brother gained an interest in fireworks and weaponry. PSR ¶ 62; Dr. Caccappolo Evaluation (Ex. A) at 2. Indeed, many of the chemical materials found in the Toro home which the government misrepresents as evidence of an imminent attack (the potassium nitrate, the aluminum powder, the firecrackers) were purchased years ago and reflect these long-standing, albeit foolish, interests. The black powder in the glass jar was extracted years ago and previously used to make homemade fireworks, just as confectioners' sugar was previously used to make novelty rockets. The jar of alleged "improvised napalm" found on the fire escape was so old it had petrified.[2] The $CO_2$ cartridges were used for the brothers' BB guns. As Dr. Caccappolo explains, in 2016-2018, as Christian's anxiety and depression worsened and his abuse of alcohol and marijuana grew, he increasingly turned to his old hobby for comfort and naturally "focus[ed] on his interest in combustive materials to distract from his emotional distress." Dr. Caccappolo Evaluation (Ex. A) at 4. At the time, Christian viewed this activity as a kind of scientific pursuit. Now that he is clean and sober, Christian recognizes that he thoughtlessly put his family and neighbors in danger, and he is appalled and remorseful for doing so.

The handful of notebook writings also are not part of any terror plot. Because of his abuse of alcohol and marijuana, Christian wrote some things that now, with fifteen months of sobriety and clear thinking, seem bizarre to him. Christian Toro Letter to Court (Ex. B) at 1. It must be stressed, however, that these ramblings are not connected to anything real, and, on their face, do not comprise a manifesto or details of a planned attack. They are simply drug and alcohol induced irrationality that ultimately meant nothing.

---

[2] This item was sent to the Explosives Unit of the FBI Laboratory. It was analyzed by an explosives chemist who identified the content of the glass jar as a solid material that contained residues of a heavy petroleum distillate. The laboratory report prepared by the chemist does not identify what the solid material is nor do the words "improvised napalm" appear anywhere in the report. The government's assertions that the jar contained "improvised napalm, consisting of gasoline and Styrofoam – a highly flammable substance also used in incendiary bombs" (Govt. Mem. at 4), and that "its sole plausible purpose is to enhance the damage that a bomb inflicts" (Govt. Mem. at 10), are not supported by their own scientific analysis.

Honorable Richard M. Berman
May 20, 2019
Page 4

Thus, for example, while the government focuses on texts mentioning guns and crossbows (Govt. Mem. at 5), it is instructive that no guns or crossbows were found in the apartment during the search conducted by law enforcement. Likewise, Mr. Toro suggesting that Student-1 call the school and say "there's an ombay in the uildingbay" to relieve her boredom (PSR ¶ 22) was simply an idiotic and unfunny joke that Mr. Toro did not think would be acted upon by the student.

In the end, none of the above items support the government's contention that Mr. Toro specifically intended to harm or kill anybody, and the Court should not incorporate such risible speculation into its sentencing decision.[3]

### CONCLUSION

This case is not a terrorist incident, it is a tragic episode in an otherwise law-abiding and inspiring life. For the reasons herein and in Mr. Toro's earlier submission, Mr. Toro should be sentenced to a non-guidelines sentence of the 15 months he has already served in prison, followed by three years of supervised release with drug and mental health counseling. Such a sentence fully accords with the sentencing factors and parsimony principle that guide federal sentencing.

Respectfully submitted,

/s/ Sabrina P. Shroff

Sabrina P. Shroff
Amy Gallicchio
Assistant Federal Defenders
Federal Defenders of New York
(212) 417-8700

SPS/hls
cc:   AUSA Elizabeth A. Hanft
      Christian Toro

---

[3] The government also dwells on the physical relationship Mr. Toro may have had during this low point in his life with one of his students. That alleged improper relationship, however, should not be part of the Court's sentencing analysis. *First*, that alleged offense is not one of the offenses at issue in this sentencing. Mr. Toro is being sentenced for manufacturing and possessing a destructive device. *Second*, Mr. Toro is being tried in another proceeding in connection with that matter, and he is considered innocent until conviction. If Mr. Toro is convicted, he will be sentenced for that offense at that time.